BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: DIISOCYANTES ANTITRUST LITIGATION | MDL Docket No. 2862 |

**PLAINTIFF C.U.E. INC.'S RESPONSE IN OPPOSITION TO MOTION TO TRANSFER THE RELATED ACTIONS TO THE WESTERN DISTRICT OF PENNSYLVANIA**

Pursuant to Rule 6.1(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML"), plaintiff C.U.E. Inc. ("Plaintiff") submits this Response in Opposition to the pending Motion for Transfer of Related Actions to the Western District of Pennsylvania for Coordinated or Consolidated Pre-Trial Proceedings (the "Motion") filed by Utah Foam Products, Inc. ("Utah Foam"). While Plaintiff agrees that coordination or consolidation of this action is appropriate, it respectfully submits that the District of New Jersey would be the best venue for transfer, as it has the closest nexus to the facts and events at the core of this litigation and is best suited to the efficient litigation of this matter.

I.     **INTRODUCTION**

Isocyanates, including the chemicals MDI and TDI, are used in the production of polyurethane products. On June 8, 2018, it was publicly reported that isocyanate producers were the targets of a Department of Justice criminal price-fixing investigation. As part of that report, Defendant Covestro confirmed that it had been contacted by the Department of Justice regarding its investigation, and that it would cooperate with the authorities. In a subsequent report, on June 11, 2018, Defendant BASF also confirmed

that it had also received a subpoena from the Department of Justice, along with "several other companies," related to an investigation into alleged violations of antitrust laws.

Since the Department of Justice investigation became publicly known, Plaintiff is aware of six civil class action complaints that have been filed against Defendants seeking damages for the same or similar allegations (the "Related Cases"):

| CASE | DISTRICT | DATE |
|---|---|---|
| *Utah Foam Products v. Bayer AG, et al.*, No. 18-cv-00858 | W.D. Pa. | 6/28/18 |
| *Isaac Industries Inc. v. BASF Corp., et al.*, No. 18-cv-12089 | E.D. Mi. | 7/3/18 |
| *C.U.E., Inc. v. BASF AG., et al.*, No. 18-cv-11439 | D. N.J. | 7/6/18 |
| *Emma Chem. Co. Inc. v. BASF SE, et al.*, No. 18-cv-02958 | E.D. Pa. | 7/16/18 |
| *Era Polymers Prop. Ltd. v. BASF SE, et al.*, No. 18-cv-12357 | E.D. Mi. | 7/30/18 |
| *Elliott Co. of Indianapolis, Inc. v. Bayer A.G.*, No. 18-cv-06882 | S.D.N.Y | 7/31/18 |

II. **ARGUMENT**

    A. **The Related Cases Should Be Transferred Under Section 1407.**

Pursuant to 28 U.S.C. §1407(a), the Panel may transfer two or more civil cases for pretrial proceedings if the panel finds that the cases "involv[e] one or more common questions of fact," that transferring the cases would serve "the convenience of parties and witnesses," and that transferring the cases will "promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). Plaintiff agrees with Utah Foam that the Related Cases meet these criteria.

### B. The Related Cases Involve Multiple Common Questions of Both Fact and Law Justifying Centralization.

All of the Related Cases allege the same or similar facts against the same Defendants. For example, each of the complaints raises the following questions:

- Whether Defendants engaged in a combination or conspiracy among themselves to raise, fix, and/or maintain the prices of isocyanates;

- Whether this agreement among Defendants violated the Sherman Act;

- Whether Defendants' anticompetitive conduct caused injury to plaintiffs and putative class members; and

- What is the measure of damages sustained by plaintiffs and class members as a result of Defendant's anticompetitive conduct.

Antitrust actions, such as this one, based in an alleged conspiracy rely on a strong basis of common fact and readily lend themselves to centralization. *See, e.g, In re Capacitors Antitrust Litig.*, 285 F. Supp. 3d 1353, 1355 (J.P.M.L. 2017) (noting the common factual and legal questions that arise from a price-fixing conspiracy); *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) (noting factual questions arising from conspiracy allegations); *In re Packaged Seafood Prod. Antitrust Litig.*, 148 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015) (same); *In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013) (same).

Although only six actions have been filed to date, given the public status of the Department of Justice investigation, the status of many Defendants as recidivist antitrust violators[1], and Plaintiff's counsel's experience with similar antitrust actions in the past,

---

[1] *See, e.g.,* Plaintiff's Class Action Complaint, Case No. 18-cv-11439 (D. N.J.), Dkt. No. 1, at ¶ 73.

Plaintiff expects that more cases will be filed against Defendants containing the same or similar allegations. Transferring the Related Cases and any additional tag-along cases will serve the convenience of parties and witnesses, as Defendants, plaintiffs, and class members would otherwise need to proceed with largely the same evidence in various venues, while at the same time monitoring the progress of the related litigations and considering the potential impact of events in every other related litigation on their own cases. Without centralization of these actions, they will proceed in different Courts, creating a substantial risk of duplicative discovery and potentially inconsistent rulings on the same subject matter, as well as wasting important judicial resources. *See In re Niaspan Antitrust Litig.*, 971 F.Supp. 2d 1346, 1347 (J.P.M.L. 2013); *In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012); *In re Lipitor Antitrust Litig.*, 856 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012).

For the reasons set forth above, Plaintiff respectfully submits that the elements for transfer under 28 U.S.C. §1407 are met and requests that the cases be centralized in a single venue.[2]

### C. The District of New Jersey is the Most Appropriate Transfer Venue.

The District of New Jersey is the most appropriate transfer venue because, as the location of two defendants' headquarters, it is the most likely location of critical evidence

---

[2] The Panel directed that any Response Briefs should address what steps have been taken to pursue alternatives to centralization. Counsel for the Related Cases conducted a telephonic conference regarding this topic, but as there is substantial disagreement among the plaintiffs in the Related Cases as to the proper venue, and the Related Cases have been filed in five different venues, Section 1404 transfer could not be agreed upon among the parties for coordination or consolidation of these actions. Moreover, with the expected volume of discovery in this large, complex action, the multiple venues already implicated and the expectation, based on similar antitrust actions including the prior urethane chemicals class action, that many more cases will be filed in various locations, informal coordination of discovery and scheduling does not seem to be a viable method to adequately reduce the judicial burden or possibility of conflicting rulings in this action.

and witnesses. In addition, the District of New Jersey is an appropriate venue for efficient consolidation or coordination of the Related Actions, with case management statistics comparable or better than other potential jurisdictions and an experienced judge, Hon. Judge William H. Walls, currently presiding over the action filed there. It also has other qualified judges in the District, including Hon. Judge William J. Martini who recently presided over a trial of individual cases from the prior urethane chemicals antitrust action that were transferred back to him following the conclusion of those actions' MDL pre-trial proceedings. For these reasons, Plaintiff respectfully submits that this Panel should centralize the Related Cases to the District of New Jersey.

### 1. The District of New Jersey has the Strongest Nexus to the Alleged Conduct.

The Panel will often take into consideration the location of defendants when transferring a group of related actions, as witnesses, documents, and other evidence are likely to be found in that district. *See, e.g.*, *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016) (centralizing cases in District of New Jersey where several defendants were located in or near the district, and therefore "relevant documents and witnesses are likely to be found there"); *In re: Benicar (Olmesartan) Prod. Liab. Litig.*, 96 F. Supp. 3d 1381, 1383 (J.P.M.L. 2015) (centralizing cases in District of New Jersey where multiple defendants were headquartered in district). The District of New Jersey is home to two of the largest Defendants in this case, Bayer and BASF, and is very close to the headquarters of another, Mitsui Chemicals America. Therefore, it would be the most convenient location for important documents and witnesses.

To begin with, Utah Foam mistakenly states in its Motion that Defendant Bayer Corporation is headquartered in the Western District of Pennsylvania. Motion at 9. Bayer Corporation's headquarters is, in fact, located in the District of New Jersey. Bayer Corporation's website states that its location in Whippany, New Jersey is "Bayer's headquarters in the USA" and that its location in Pittsburg is only "home to HR, IT, and other corporate functions."[3] Further, New Jersey is home not only to Bayer Corporation, but also to BASF,[4] another massive Defendant corporation that is likely to have a multitude of relevant documents and witnesses. Finally, Defendant Mitsui Chemicals America's headquarters is in Rye Brook, NY,[5] which is only an hour's drive from Newark. The existence of the United States headquarters for these two large Defendants in a single district and the close proximity of another strongly counsels in favor of centralization in New Jersey. No other venue can claim such a likely concentration of documents and witnesses.

In addition, several foreign Defendants have been named in this action. In particular, several Defendants' ultimate parent companies, such as Bayer, BASF, and Covestro, are located in Germany, Wanhua is based in China, and Mitsui in Japan.[6] New Jersey's coastal location, as well as relative proximity to airports not only in New Jersey but also in New York, will make it more convenient for parties and counsel travelling both domestically and internationally than other venues such as the Western District of Pennsylvania or the Eastern Districts of Michigan or Pennsylvania. There are so many

---

[3] *See* https://www.bayer.us/en/contact-us/ (visited July 30, 2018).
[4] *See* https://www.basf.com/us/en/company/about-us/Locations/featured-sites/about-hq.html (visited July 30, 2018), identifying Florham Park, New Jersey as BASF's North American Headquarters.
[5] *See* https://paw.mitsuichemicals.com/locations.htm (visited July 30, 2018).

travel options that Newark, LaGuardia and JFK airports collectively serviced 135 million passengers and nearly one million flights in 2017.[7] This Panel has noted the accessibility and convenience of the District of New Jersey for travel in the past. *See, e.g., In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) (stating that New Jersey is a "convenient and accessible forum" for nationwide litigation)*; In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*, 254 F. Supp. 3d 1379, 1380 and fn. 4 (J.P.M.L. 2017) (finding New Jersey a "relatively convenient venue for most parties" even when counsel for some plaintiffs only had offices in Washington D.C., North Carolina, Tennessee, and Kentucky); *In re: Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) (finding New Jersey "a convenient and accessible forum with the resources to devote to this litigation"); *In re: Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377–1378 (J.P.M.L. 2013) (stating that New Jersey is a "convenient and accessible forum.")

For these reasons, New Jersey is the most likely venue for critical evidence, and the most appropriate venue for transfer to serve the convenience of parties and witnesses.

### 2. New Jersey Has an Efficient Docket Suitable for Adjudication of This Matter.

The docket of the potential district is another important consideration for the Panel when determining the proper transferee district. *See, e.g., In re Stryker Rejuvenate, ABG II Hip Implant Prod. Liab. Litig.*, 949 F. Supp. 2d 1378, 1380 (J.P.M.L 2013)

---

[6] *See* http://www.whchem.com/en/aboutus/locations.shtml; https://www.mitsuichem.com/en/corporate/ds/office.htm (visited July 30, 2018).
[7] *See* https://www.panynj.gov/airports/traffic-statistics.html (visited July 30, 2018).

(transferring cases to a venue that "enjoys favorable docket conditions"); *In re: Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, 896 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012) (same). The District of New Jersey is an excellent venue under this standard.

The District of New Jersey has significantly more judges available than the Western District of Pennsylvania and therefore can handle more MDLs than the Western District of Pennsylvania. Thirteen of seventeen active judgeships are currently filled in the District of New Jersey compared with only four of ten active judgeships in the Western District of Pennsylvania.[8] The Eastern Districts of Michigan and Pennsylvania are similarly situated as New Jersey, with thirteen and eighteen sitting judges, respectively. Moreover, the judge currently presiding over Plaintiff's action filed in New Jersey, Judge William H. Walls, has antitrust MDL experience but no pending MDL actions currently before him and a civil caseload significantly lower than other candidate judges.[9] According to the latest statistics, Judge Walls has only 136 pending civil cases, compared with Judge Roberts' 175 in the Eastern District of Michigan and Judge Pappert's 186 in the Eastern District of Pennsylvania.[10]

To the extent district-wide (as opposed to individual judge) statistics are relevant, the District of New Jersey more efficiently processes and closes significantly more cases than other potential venues. In 2017, the District of New Jersey terminated 10,020 civil

---

[8] *See* http://www.uscourts.gov/judges-judgeships/authorized-judgeships/chronological-history-authorized-judgeships-district-courts (visited on July 17, 2018).

[9] *See MDL Statistics Report – Distribution of Pending MDL Dockets by District*, JPML Litigation Statistics, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-16-2018.pdf (visited on July 17, 2018).

[10] *See Judge Information Center, Civil Cases in District Court*, http://tracfed.syr.edu/judges/interp/civjdglist.html?nosgrpsel=all&distric2= (visited July 30, 2018).

cases, compared to only 2,596 cases in the Western District of Pennsylvania.[11] This is also a larger number than the Eastern District of Michigan's 4,395 terminations or the Eastern District of Pennsylvania's 7,424 terminations, and equivalent to the Southern District of New York's 10,001 terminations. Moreover, the median time from filing to termination "during or after pre-trial" in the District of New Jersey is only 11.9 months, compared to 28 months in the Western District of Pennsylvania.[12] This is also slightly faster than the Eastern District of Michigan's 14 months and comparable to the Eastern District of Pennsylvania's 8.4 months and the Southern District of New York's 11.8 months. In short, while New Jersey may have more cases in its judicial system, it has shown the ability to more expediently resolve those cases, and centralization of the Related Cases there will present no significant additional burden. To the contrary, it is demonstrably more efficient. For this reason, transfer to the District of New Jersey is merited.

### 3. Judge Walls is Well Suited to Preside Over this Litigation.

The Hon. Judge William H. Walls is currently assigned to Plaintiffs' case and is an excellent candidate to preside over this litigation. He has been a federal judge for twenty-four years, with fifteen years on the state bench before that. He has extensive MDL and antitrust experience, and therefore would be an excellent candidate for centralization of the Related Actions. *See, e.g., In re The Prudential Ins. Co. of America*

---

[11] *See U.S. District Courts—Civil Cases Filed, Terminated, and Pending—During the 12-Month Periods Ending December 31, 2016 and 2017*, located at http://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2017/12/31 (visited July 30, 2018).

[12] *See U.S. District Courts—Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending December 31, 2017*, located at http://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2017/12/31 (visited July 30, 2018). Although the Western District of Pennsylvania has a faster

*Sales Practices Litig.*, MDL No. 1061; *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, Case No. 12-cv-5120; *In re: Lamictal Direct Purchaser Antitrust Litig.* Case No. 12-cv-0995; *In Re Bulk [Extruded] Graphite Products Antitrust Litig.*, Case No. 02-cv-06030; *In re Mercedes–Benz Antitrust Litig.*, Case No. 99-cv-4311.

In addition, if Judge Walls is unavailable or if this Panel finds that he is not the appropriate judge for transfer, New Jersey has many other qualified and experienced judges that would be equally capable of presiding over this litigation. The Hon. Judge William J. Martini, who has been on the federal bench for thirteen years and was a member of the United States House of Representatives before that, recently concluded a jury trial of consolidated cases from the prior urethane chemicals antitrust action that were remanded to him following the conclusion of those MDL pre-trial proceedings. *See Carpenter Co. v. BASF SE et al*, Case No. 08-cv-05169 (D.N.J.). Accordingly, Judge Martini is not only an experienced jurist, but is also already intimately familiar with the subject matter of this case. There are inherent advantages to having a judge already familiar with the urethanes industry preside over these cases.

**4. The Location of the First-Filed Case Should Bear No Weight.**

Although the first-filed case is located in the Western District of Pennsylvania, that should bear little weight on this Panel's decision. These complaints followed announcements of a Department of Justice criminal investigation and are not triggered by any advanced, proprietary investigation. Plaintiff C.U.E.'s case was filed in the District of New Jersey only eight days after Utah Foam's complaint, and none of the Related Cases are significantly advanced. In fact, as Utah Foam itself notes, its case is still

---

median time for disposition of cases that actually reach trial, this Panel centralizes cases for pre-trial purposes only.

pending reassignment to a district judge following declination of a magistrate judge, and on July 27, 2018, the parties stipulated to a stay of the proceedings. Therefore, no substantive activity at all has taken place in that action. *See* Motion at 10.

Thus, the Utah Foam action is not procedurally better positioned than any of the other Related Actions such that centralization in the Western District of Pennsylvania would take advantage of more advanced proceedings. Because of this, the cases cited in Utah Foam's Motion are distinguishable, as this Panel's decision in those cases was predicated either primarily upon a strong factual connection to that district with only a mention in passing of the first-filed cases, or upon some actual activity in the first-filed case. *See, e.g., In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (noting that the transferee judge "has had an opportunity to become familiar with this litigation over the six months" that the first-filed case was pending before him); *In re Interest Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (transferring case because of the "strong factual connection," where most defendants were based in the transferee district, and noting only in passing that it was also the location of the first-filed case); *In re: Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013) (transferring case where twelve related actions were there, including the first-filed case, and noting that it "undoubtedly will be the most convenient for the greatest number of parties in this litigation," that relevant documents and witnesses would be located there, and that grand jury proceedings were there). Where there are no additional facts strongly favoring the first-filed district, this Panel has refused to give it dispositive weight, and it should also not be a deciding factor here. *See, e.g., In re Halftone Color Separations ('809) Patent Litig.,* 547 F. Supp. 2d

1383, 1385 (J.P.M.L. 2008) (although noting that the Panel has given the first-filed case "some weight," it would not transfer related cases there where the district had "no special connection" to the case and where docket conditions were better elsewhere).

### III.    CONCLUSION

For all of the above reasons, including the likely location of documents and witnesses, the convenience of the parties, the efficiency of the docket, and the appropriate qualifications of the judges in the District, Plaintiff respectfully submits that this Panel should transfer the Related Cases for pretrial coordination or consolidation to the District of New Jersey.

DATED:  August 1, 2018                              HARTLEY LLP

By: s/ *Jason S. Hartley*
Jason S. Hartley
HARTLEY LLP
500 West C Street, Suite 1750
San Diego, CA 92101
Telephone: (619) 400-5822
Facsimile: (619) 400 5832
hartley@hartleyllp.com

Peter S. Pearlman
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Telephone: (201) 845-9600
Facsimile: (201) 845-9423
psp@njlawfirm.com

Eric L. Cramer
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: ecramer@bm.net

Daniel J. Walker
BERGER & MONTAGUE, P.C.
2001 Pennsylvania Avenue, NW,
Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Facsimile: (215) 875-4604
Email: dwalker@bm.net

Vincent J. Esades
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
vesades@heinsmills.com

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave, Ste 200
Cleveland, OH 44113
Telephone: (216) 622-1851
dkaron@karonllc.com