**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:  DIISOCYANATES ANTITRUST LITIGATION | MDL No. 2862 |

**PLAINTIFF ISAAC INDUSTRIES INC.'S MEMORANDUM IN SUPPORT OF TRANSFER OF ALL ACTIONS TO THE EASTERN DISTRICT OF MICHIGAN FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.   NATURE OF THE ACTIONS ............................................................................3

III.   ARGUMENT .....................................................................................................4

    A.   Transfer to a Single Forum for Consolidated or Coordinated
    Pretrial Proceedings is Appropriate ........................................................4

        1.   All Actions share common issues of fact....................................4

        2.   Transfer of the Actions is for the convenience of the parties
        and witnesses ..............................................................................5

        3.   Transfer to a single forum will promote the just and
        efficient conduct of the Actions.................................................6

    B.   The Eastern District of Michigan is the Most Appropriate
    Transferee Forum.....................................................................................8

        1.   Two out of the five Actions are filed in the Eastern District
        of Michigan.................................................................................9

        2.   Dow Chemical, one of the largest Defendants, is located in
        the district...................................................................................9

        3.   Detroit provides a centralized and, therefore, easily
        accessible location for all parties, counsel, and witnesses,
        which is especially important where the majority are
        scattered coast-to-coast, and internationally .............................11

        4.   The docket conditions in the Eastern District of Michigan
        are favorable to accommodate the Actions.................................14

        5.   The Eastern District of Michigan is especially well-
        equipped to preside over this MDL, having previously
        handled other large antitrust class actions .................................16

IV.   STEPS TAKEN TO PURSUE ALTERNATIVES TO
    CENTRALIZATION..........................................................................................17

V.   CONCLUSION....................................................................................................18

010761-11 1045936 V1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.,*
    416 F. Supp. 2d 1346 (J.P.M.L. 2006) ................................................................7

*In re Auto. Wire Harness Sys. Antitrust Litig.,*
    867 F. Supp. 2d 1349 (J.P.M.L. 2012) ................................................................4

*In re Benicar (Olmesartan) Prods. Liab. Litig.,*
    96 F. Supp. 3d 1381 (J.P.M.L. 2015) ..................................................................4

*In re Fresh & Process Potatoes Antitrust Litig.,*
    744 F. Supp. 2d 1381 (J.P.M.L. 2010) ................................................................5

*In re H&R Block Mortg. Corp. Prescreening Litig.,*
    435 F. Supp. 2d 1347 (J.P.M.L. 2006) ................................................................7

*In re London Silver Fixing, Ltd.,*
    52 F. Supp. 3d 1381 (J.P.M.L. 2014) ..................................................................6

*In re Methyl Methacrylate (MMA) Antitrust Litig.,*
    435 F. Supp. 2d 1345 (J.P.M.L. 2006) ................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    398 F. Supp. 2d 1356 (J.P.M.L. 2005) ................................................................4

*In re Polyurethane Foam Antitrust Litig.,*
    753 F. Supp. 2d 1376 (J.P.M.L. 2010) ................................................................8

*In re Portfolio Recovery Assocs., L.L.C.,*
    846 F. Supp. 2d 1380 (J.P.M.L. 2011) ................................................................7

*In re Refrigerant Compressors Antitrust Litig.,*
    626 F. Supp. 2d 1320 (J.P.M.L. 2009) ..............................................................17

*In re Rio Hari Naturalizer Prods. Liab. Litig.,*
    904 F. Supp. 1407 (J.P.M.L. 1995) ...................................................................11

*In re Southeastern Milk Antitrust Litig.,*
    530 F. Supp. 2d 1359 (J.P.M.L. 2008) ................................................................7

*In re Sugar Indus. Antitrust Litig.,*
    395 F. Supp. 1271 (J.P.M.L. 1975) .....................................................................7

*In re Teflon Prods. Liab. Litig.,*
    416 F. Supp. 2d 1364 (J.P.M.L. 2006) ..............................................................11

*In re TJX Cos., Inc., FACTA Litig.*,
    505 F. Supp. 2d 1379 (J.P.M.L. 2007)....................................................................................11

*In re Urethane Antitrust Litig.*,
    333 F. Supp. 2d 1379 (J.P.M.L. 2004)....................................................................................8

*In re Vehicle Carrier Servs. Antitrust Litig.*,
    978 F. Supp. 2d 1382 (J.P.M.L. 2013)....................................................................................5

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    435 F. Supp. 2d 1338 (J.P.M.L. 2006)....................................................................................9

*In re Wireless Tel. 911 Calls Litig.*,
    259 F. Supp. 2d 1372 (J.P.M.L. 2003)....................................................................................11

## OTHER AUTHORITIES

David F. Herr, MULTIDISTRICT LITIGATION MANUAL (2018)............................................... *passim*

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH) (2010) .....................8

010761-11 1045936 V1

Plaintiff Isaac Industries, Inc. ("Isaac Industries") respectfully submits this memorandum supporting transfer of the Actions[1] to the Eastern District of Michigan for coordinated or consolidated pretrial proceedings.  This memorandum is in response and in opposition to: 1) Plaintiff Utah Foam Products Inc.'s ("Utah Foam") motion to transfer the Actions to the Western District of Pennsylvania[2]; and 2) Plaintiff Emma Chemicals Co., Inc.'s ("Emma Chemicals") response arguing for transfer of the Actions to the Eastern District of Pennsylvania.[3]

## I.        INTRODUCTION

Plaintiff Isaac Industries agrees with Plaintiff Utah Foam and Plaintiff Emma Chemicals that the Actions warrant centralization under 28 U.S.C. § 1407.  Transfer of the Actions to a single forum is essential because it will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and will conserve the resources of the parties, their counsel, and the judges before whom the Actions are currently pending.  Transfer is especially appropriate here where all Plaintiffs allege the same price-fixing conspiracy by Defendants, involving the same two

---

[1] To date, five actions have been filed:  1) *Isaac Industries, Inc. v. BASF Corp., et al.*, No. 2:18-cv-12089 (E.D. Mich.); 2) *Era Polymers Proprietary Ltd. v. BASF SE, et al.*, 2:18-cv-12357 (E.D. Mich.); 3) *Utah Foam Products, Inc. v. Bayer A.G., et al.*, No. 2:18-cv-00858 (W.D. Pa.); 4) *C.U.E., Inc. v. BASF AG, et al.*, 2:18-cv-11439 (D.N.J.) ("*C.U.E.*"); and 5) *Emma Chemicals Co., Inc. v. BASF SE, et al.*, 2:18-cv-02958 (E.D. Pa.) (collectively, the "Actions").

[2] *See* ECF No. 1 (J.P.M.L. July 10, 2018) and Memorandum in Support of Transfer of Related Actions to the Western District of Pennsylvania for Coordinated or Consolidated Pretrial Proceedings, MDL Docket No. 2862, ECF No. 1-1 (J.P.M.L. July 10, 2018) (cited herein as "Utah Foam Brief").

[3] *See* Interested Party Response of Plaintiff Emma Chemicals Co., Inc. in Opposition to Transfer of Related Actions to the Western District of Pennsylvania for Coordinated or Consolidated Pretrial Proceedings, and in Support of Transfer of Related Actions to the Eastern District of Pennsylvania for Coordinated or Consolidated Pretrial Proceedings, MDL Docket No. 2862, ECF No. 7 (J.P.M.L. July 18, 2018) (cited herein as "Emma Chemicals Brief").

products, MDI and TDI,[4] and where Plaintiffs in all Actions will seek common evidence to prove their claims.

      Plaintiff Isaac Industries, however, does not agree with Plaintiff Utah Foam that the most appropriate transferee forum for the Actions is the Western District of Pennsylvania.  Nor does it agree with Plaintiff Emma Chemicals that the Eastern District of Pennsylvania is the most appropriate transferee forum.[5]  Rather, ***the most appropriate forum for transfer of these Actions is the Eastern District of Michigan*** for a number of important reasons:  1) two of the five Actions are filed in the Eastern District of Michigan; 2) Dow Chemical Co., one of the  largest Defendants named in the Actions, is located in the district; 3) Detroit provides the most centralized and, therefore, the most accessible location for the parties, counsel, and witnesses, the majority of whom are scattered coast-to-coast in the U.S. and internationally; 4) the docket conditions in the Eastern District of Michigan are favorable; and 5) the Eastern District of Michigan is well-equipped to preside over this complex MDL, especially given its experience in adjudicating other large antitrust class actions, such as the *Auto Parts* MDL.[6]

---

[4] "MDI" refers to methylene diphenyl diisocyanate, and is a raw material used in combination with polyether polyols for the production of rigid insulation foams and structural foams, among other applications.  "TDI" refers to toulene diisocyanate, and is another type of raw material used in combination with polyether polyols for the production of flexible foams for furniture, mattresses, packaging foam, and automobile seating, among other applications.  *See* Complaint, *Isaac Industries*, No. 2:18-cv-12089, ECF No. 1 (E.D. Mich. July 3, 2018) at ¶¶ 6-9 (hereinafter "Isaac Industries Complaint").  MDI and TDI are collectively referred to herein as "Diisocyanates."

[5] *See* Emma Chemicals Brief.

[6] *In re Automotive Parts Litig.*, MDL No. 2311 (E.D. Mich.) ("*Auto Parts*").

Accordingly, the Panel should transfer the Actions, and any that may be later-filed,[7] to the Eastern District of Michigan pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the JPML Rules of Procedure.

## II.   NATURE OF THE ACTIONS

Plaintiffs all allege common operative facts.  Plaintiffs are all direct purchasers of Diisocyanates, and all allege that Defendants, the major manufacturers, marketers, and sellers of Diisocyanates agreed, combined, and conspired to inflate, fix, raise, maintain, or artificially stabilize prices of Diisocyanates in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (the "Sherman Act").

Plaintiffs Isaac Industries and C.U.E. allege that Defendants conspired to fix prices during the period January 1, 2015, through the present.[8]  All other Plaintiffs allege harm during a subset of that period – January 1, 2016, through the present.[9]  Plaintiffs in all Actions generally name the same corporate families as Defendants, with only slight variation in each complaint.[10]

---

[7] Plaintiff Isaac Industries anticipates that additional actions may be filed before the JPML decides the issue of transfer.  Plaintiff Isaac Industries respectfully requests that related later-filed cases (as well as any tag-along cases) also be transferred to the Eastern District of Michigan for coordinated or consolidated pretrial proceedings.

[8] Isaac Industries Complaint at ¶ 2; Complaint, *C.U.E.,* No. 2:18-cv-11439 (D.N.J. July 6, 2018), ECF No. 1 (hereinafter cited as "C.U.E. Complaint") at ¶ 3.

[9] Complaint, *Utah Foam,* No. 2:18-cv-00858 (W.D. Pa. June 28, 2018), ECF No. 1 (hereinafter cited as "Utah Foam Complaint") at ¶ 5; Complaint, *Emma Chemicals, Co., Inc. v. BASF SE, et. al.*, 2:18-cv-02958 (E.D. Pa. July 17, 2018), ECF No. 1 (hereinafter cited as "Emma Chemicals Complaint") at ¶ 1; Complaint, *Era Polymers*, No. 2:18-cv-12357 (E.D. Mich. Jul. 30, 2018), ECF No. 1 (hereinafter cited as "Era Polymers Complaint") at ¶ 3 (alleged class period beginning no later than January 1, 2016).

[10] Collectively, Plaintiffs name the following corporate families as Defendants:  BASF, Bayer, Covestro, Dow, Hunstman, Lanxess, Mitsui, and Wanhua.  *See* Isaac Industries Complaint at ¶¶ 11-18; C.U.E. Complaint at ¶¶ 12-37; Utah Foam Complaint at ¶¶ 21-34; Era Polymers Complaint at ¶¶ 20-31; and Emma Chemicals Complaint at ¶¶ 13-27.  The Panel has repeatedly held that slight differences in the Defendants named in the Actions or differences in legal theories are not factors against centralization.  *See* David F. Herr, MULTIDISTRICT

All Plaintiffs allege that the United States Department of Justice ("DOJ") has begun a criminal investigation into the market for MDI, and that some or all of the Defendants have received subpoenas as part of the DOJ's grand jury investigation.[11]  All Plaintiffs seek class action status pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), and will seek the same types of evidence to prove their allegations.[12]

## III.    ARGUMENT

### A.    Transfer to a Single Forum for Consolidated or Coordinated Pretrial Proceedings is Appropriate

Transfer is appropriate where:  1) the actions share common issues of fact; 2) transfer is for the convenience of the parties and witnesses; and 3) transfer will advance the just and efficient conduct of the actions.  *See* MDL MANUAL, § 5:3 (citing 28 U.S.C. § 1407(a)).  Here, all three requirements are easily satisfied.

#### 1.    All Actions share common issues of fact

The Actions share many common issues of fact, including, *inter alia*:

---

LITIGATION MANUAL (2018) (hereinafter cited as "MDL MANUAL") § 5:44 & n.2 (collecting cases); *see also, e.g., In re Benicar (Olmesartan) Prods. Liab. Litig.*, 96 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) (plaintiff-specific questions are not an impediment to centralization where common questions of fact predominate); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 398 F. Supp. 2d 1356, 1358 (J.P.M.L. 2005) (differences in fact and/or law are not a barrier to centralization).

[11] Isaac Industries Complaint at ¶¶ 65-67; C.U.E. Complaint at ¶¶ 70-73; Utah Foam Complaint at ¶ 9; Emma Chemicals Complaint at ¶¶ 98-102; and Era Polymers Complaint at ¶¶ 103-112.  *See also In re Auto. Wire Harness Sys. Antitrust Litig.*, 867 F. Supp. 2d 1349 (J.P.M.L. 2012) (the Panel centralized cases in Eastern District of Michigan where all cases alleged similar claims against overlapping defendants, and the cases stemmed from the same governmental investigation).

[12] Isaac Industries Complaint at ¶¶ 21-29; C.U.E. Complaint at ¶¶ 96-102; Utah Foam Complaint at ¶¶ 38-45; Emma Chemicals Complaint at ¶¶ 29-36; and, Era Polymers Complaint at ¶¶ 117-126.

- Whether Defendants and their co-conspirators engaged in a conspiracy to raise, fix, maintain or stabilize the prices of Diisocyanates sold in the United States during the alleged conspiracy period;

- The identity of the participants in the alleged conspiracy, and each's role in it;

- The duration of the alleged conspiracy, and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

- Whether Defendants violated the Sherman Act;

- Whether a class should be certified under Rule 23;

- Whether Defendants' conduct, and the conduct of their co-conspirators, caused injury to the business or property of Plaintiffs and members of the proposed classes in the Actions; and

- The measure and amount of damages sustained by Plaintiffs and members of the proposed classes.

Here, where the Actions all share nearly identical issues of fact, transfer to a single forum for consolidated or coordinated pretrial proceedings is especially appropriate.[13]

### 2.    Transfer of the Actions is for the convenience of the parties and witnesses

Given the multitude of parties, counsel, and witnesses that will be involved in the actions, centralization would provide a benefit to all because it would provide an easily accessible location for all, and it would equalize the parties in the Actions in terms of burden and cost. *See* MDL MANUAL, § 5:5. Therefore, transfer to the Eastern District of Michigan would be for the convenience of the parties and witnesses, and this requirement is satisfied.

---

[13] *See, e.g., In re Vehicle Carrier Servs. Antitrust Litig.*, 978 F. Supp. 2d 1382, 1382 (J.P.M.L. 2013) (centralization warranted where actions shared allegations that defendants violated the Sherman Act, and where centralization would eliminate duplicative discovery, prevent inconsistent pretrial rulings, including with respect to class certification, and conserve the resources of the parties, their counsel and the judiciary); *In re Fresh & Process Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) (transfer to a single forum was appropriate where "[t]hese actions share factual questions relating to alleged anticompetitive conduct in the market for fresh and process potatoes").

### 3.  Transfer to a single forum will promote the just and efficient conduct of the Actions

Transfer of the Actions to a single forum would eliminate the very high risk of duplicative discovery.  Avoiding duplication of discovery strongly favors transfer to a single forum for consolidated or coordinated pretrial proceedings.  *See id.*, § 5:6 & n.2.  Here, Plaintiffs in the Actions will seek to develop similar evidence.  Plaintiffs will likely seek production of the same data and documents to support their claims, will largely seek to depose the same witnesses, and will have the same goals in obtaining evidence through discovery.  Discovery may be especially complex in that it may exist internationally, and may raise issues of translation or interpretation, which could be extremely inconsistent and costly if duplicated in various forums.[14]  Defendants will have similar or overlapping defenses in each Action, and will seek common discovery to support those defenses as well.  The parties in the Actions may also seek the same information in discovery from nonparties.  Without transfer, nonparties would be especially burdened in that they would likely receive a multitude of similar subpoenas, seeking similar information in each Action, and would need to respond to, negotiate, and make production in each action, separately.  Transfer to a single forum would eliminate the need for such duplicative discovery, and would greatly streamline discovery (and its costs).

Transfer of the Actions would also avoid inconsistent pretrial rulings.  The Panel has consistently ordered the transfer of cases to a single forum where there is a risk of inconsistent

---

[14] Here, some defendants are located internationally and, therefore, foreign discovery will likely be substantial.  In addition to the complications of obtaining foreign discovery, foreign-language discovery (and the translation process) is especially complicated, and may be difficult to coordinate, and duplicative if the Actions are not centralized.  *See, e.g., In re London Silver Fixing, Ltd.*, 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014) (ordering centralization because it would "eliminate duplicative discovery (which appears certain to be international in scope)").

pretrial rulings.[15]  If the Actions were to proceed in separate courts, with multiple courts examining the same common questions of law and fact on separate schedules, the result would be inconsistent rulings and needless duplication of resources.  For example, looking at the same common facts, one court may deny a motion to dismiss, and one court may grant it.

Transfer is especially appropriate in class actions.  "The potential for conflicting decisions on class certification is a category unto itself."[16]  The Panel has consistently held that eliminating duplicative discovery and avoiding inconsistent rulings is especially important in class actions where Plaintiffs need to satisfy the Rule 23 prerequisites.[17]  And, the Panel has expressed similar concern about expert witnesses and potentially inconsistent *Daubert* rulings. MDL MANUAL, § 5:27 & n.4.  Without transfer, the risk of inconsistent rulings in the Actions is high.

Further, "[a]ntitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts."  MDL MANUAL, §

---

[15] MDL MANUAL, § 5:27

[16] MDL MANUAL, § 5:27 (citing MDL MANUAL, § 5:24).

[17] *See also, e.g., In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("There is another highly persuasive reason for transferring all these actions to one district for pretrial proceedings.  We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists."); *In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (coordinating and transferring actions where all actions shared factual questions, citing the need to prevent inconsistent rulings, especially on class certification); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (directing centralization "in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification"); *In re Portfolio Recovery Assocs., L.L.C.,* 846 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) ("Centralization therefore will eliminate the risk of inconsistent rulings on class certification."); *In re H&R Block Mortg. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006) (finding consolidation appropriate when there were "three actions contain[ing] competing class allegations and involve facts of sufficient intricacy that could spawn challenging procedural questions and pose the risk of inconsistent and/or conflicting judgments").

5:14.  Importantly, the Panel ordered transfer to a single forum in several previous antitrust class actions involving the same or similar claims as alleged here, and against some of the same Defendants.  *See In re Urethane Antitrust Litig.*, 333 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2004) (centralizing cases under § 1407 in District of Kansas where there were common questions of fact regarding a conspiracy in the markets for MDI, TDI, and polyesther polyols, and transferee forum would best serve the convenience of the parties and witnesses, and promote the just and efficient conduct of the litigation); *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376 (J.P.M.L. 2010) (centralizing cases under § 1407 in the Northern District of Ohio in actions involving common questions of fact regarding defendants and their co-conspirators engaging in a conspiracy to fix, raise, maintain and/or stabilize the prices charged for polyurethane foam sold in the United States in violation of antitrust laws).

Centralization of the Actions in one district, with coordinated or consolidated discovery, would eliminate duplicative discovery and avoid inconsistent pretrial rulings, and would thereby greatly minimize burden and conserve the resources of the parties, witnesses, counsel, and the judiciary.[18]  Therefore, transfer to a single forum would promote the just and efficient conduct of the Actions under 28 U.S.C. § 1407(a), and the requirements for transfer are met.

**B.      The Eastern District of Michigan is the Most Appropriate Transferee Forum**

When all factors are considered, the Eastern District of Michigan is the most appropriate transferee forum for the Actions.

---

[18] *See also* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH), § 20.131 (2010).

### 1.      Two out of the five Actions are filed in the Eastern District of Michigan

Plaintiffs Isaac Industries and Era Polymers filed complaints in the Eastern District of Michigan, which lends support to the Eastern District of Michigan as a transferee forum.[19]

### 2.      Dow Chemical, one of the largest Defendants, is located in the district

The Panel "has frequently considered the location of documents and witnesses in selecting a transferee district."  *See* MDL MANUAL, § 6:5 & n.1 (collecting cases).  Here, Defendants Dow Chemical Company and Dow Dupont Inc., (collectively "Dow") are located in the Eastern District of Michigan (in Midland, Michigan).[20]  As a result, key witnesses and evidence will likely be located in the forum as well, making the Eastern District of Michigan a key center of gravity for the litigation.  *See id.*

Plaintiff Utah Foam makes a similar argument regarding a Bayer defendant's location in the Western District of Pennsylvania (Utah Foam Brief at 8), as does Emma Chemicals in pointing to a Wanhua defendant's location in the Eastern District of Pennsylvania (Emma Chemicals Brief at 5-6).  However, there are several reasons why Dow's location should weigh more heavily as a factor for forum selection than the location of other Defendants.  Dow was a key target defendant in several earlier litigations involving collusion in the markets for MDI, TDI, and several related products.  While other currently named defendant entities in the Bayer, BASF and Huntsman corporate families were also named in those earlier actions, Dow was the only previous defendant to not settle its claims in *In re Urethane Antitrust Litig.*, 04-md-01616

---

[19] *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 435 F. Supp. 2d 1338, 1340 (J.P.M.L. 2006) (selecting forum where largest number of actions are pending); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006) (same).

[20] Plaintiff Isaac Industries, Plaintiff Utah Foam, and Plaintiff Emma Chemicals name Dow Chemical Company as a Defendant in their respective complaints.  Isaac Industries Complaint at ¶ 15; Utah Products Complaint at ¶ 26; Emma Chemicals Complaint at ¶ 19.  Plaintiffs C.U.E. and Era Polymers name Dow Chemical Company and Dow Dupont, Inc., a holding company. C.U.E. Complaint at ¶¶ 21, 22; Emma Chemicals Complaint at ¶¶ 27-28.

(D. Kan) ("*Urethanes*"), and to go to trial in that case.  In *Urethanes*, a five-week trial resulted in a $400 million verdict for plaintiffs against Dow.[21]  After trebling of damages and assessment of costs, the judgment against Dow moved to $1.2 billion.[22]  The United States Court of Appeals for the Tenth Circuit affirmed that judgment, and in February 2016, Dow settled the case for $835 million.[23]  Given Dow's history of maintaining its defenses to the end, the Eastern District of Michigan is a more compelling center of gravity in the long-term picture for this litigation should Dow choose the same strategy again.[24]

In addition, a federal court's subpoena power (power to subpoena witnesses within 100 miles outside of a district) is also an important factor in selecting a transferee forum.  *See* MDL MANUAL, § 6:5 & n.9 ("One reason that proximity to the transferee district may be sufficient is the subpoena power of the federal courts, and its reach up to 100 miles outside the district.").  Should Dow take the same position as in earlier litigation and go to trial here, key evidence and witnesses for trial would not only be located in the Eastern District of Michigan, but they would also fall squarely within the subpoena power of the Eastern District of Michigan, making it an especially compelling transferee forum.

---

[21] http://fortune.com/2016/02/26/dow-price-fixing/ (last visited July 12, 2018).

[22] *Id.*

[23] *Id.*

[24] There is good indication that Dow might litigate without compromise again here. Bloomberg reported Dow was prepared to continue litigating, but agreed to settle after U.S. Supreme Court Justice Antonin Scalia's death reduced its chances of overturning the $835 million jury award.  *See* https://www.bloomberg.com/news/articles/2016-02-26/dow-cites-scalia-s-death-in-settling-urethanes-case-for-835m (last visited July 24, 2018).

3.   **Detroit provides a centralized and, therefore, easily accessible location for all parties, counsel, and witnesses, which is especially important where the majority are scattered coast-to-coast, and internationally**

The Actions involve multiple parties and counsel spread throughout the U.S. and internationally. Where parties, witnesses, and counsel are so dispersed, the Panel has expressed a preference for the ***Solomonic approach – selecting a transferee district in the middle***.  *See* MDL MANUAL, § 6:5 & n.19.[25] Detroit is in the middle, and would be the most convenient forum for the great majority of those coming to the Court, much more so than the Western District of Pennsylvania, the District of New Jersey, or the Eastern District of Pennsylvania, which would each only be convenient for a small few.[26]

Even more compelling is the Eastern District of Michigan's proximity to Detroit Metro International Airport ("DTW").  DTW handles over 1000 flights daily, and services over 34 million passengers per year.[27]  Detroit is a hub for Delta Airlines, and boasts many daily flights to and from nearly all major U.S. cities.  Detroit is also is a gateway for international travelers with many airlines, both domestically and internationally, offering non-stop service.[28]  Hotel

---

[25] *See also, e.g.*, *In re Teflon Prods. Liab. Litig.*, 416 F. Supp. 2d 1364 (J.P.M.L. 2006) (centralizing all class actions against manufacturer across the country in the Southern District of Iowa); *In re TJX Cos., Inc., FACTA Litig.*, 505 F. Supp. 2d 1379, 1380 (J.P.M.L. 2007) ("Given the geographic dispersal of the actions, no district stands out as the geographic focal point for this nationwide docket… Thus, we have sought a transferee district that is centrally located for the parties….").

[26] *See In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003) (considering geographic centrality as a factor in selecting transferee district); *In re Rio Hari Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) (finding the Eastern District of Michigan the appropriate transfer forum because it "provides a geographically central location for this nationwide litigation").

[27] *See* https://www.metroairport.com/about-us (last visited July 9, 2018).

[28] *See* https://www.skyscanner.com/flights-to/dtw/airlines-that-fly-to-detroit-wayne-county-airport.html (last visited July 12, 2018).

prices in Detroit are reasonable, and a number of good options exist within walking distance of the federal courthouse.[29]

Here, those that will be involved in the Actions are scattered throughout the U.S. and throughout the world.  Plaintiffs in the Actions are located in Florida (Isaac Industries), Utah (Utah Foam), Pennsylvania (C.U.E.), and Connecticut (Emma Chemicals).  Plaintiff Era Polymers is an Australian company with its principal place of business in New South Wales, Australia.  It has offices in the United States in Texas, North Carolina, and Connecticut.[30] Defendants' headquarters, and their facilities, are located coast-to-coast and abroad, e.g., Dow Defendants (Michigan); Huntsman Defendants (Texas); BASF Defendants (Germany and New Jersey); Covestro Defendants (Germany and Texas); Lanxess Defendants (Germany and Pennsylvania); Mitsui Defendants (Japan, Korea, Georgia, and New York); and Wanhua Defendants (China and Pennsylvania).  Defendants also have manufacturing plants in various locations, where witnesses and evidence may be located, e.g., Hunstman and BASF have manufacturing operations in Geismar, Louisiana.[31]

Counsel for Plaintiffs are also greatly dispersed.  For example, counsel for Plaintiff Isaac Industries are located in Detroit, Michigan, Seattle, Washington and Chicago, Illinois.  Counsel for Plaintiff C.U.E. are located in Philadelphia, Pennsylvania, New Jersey, San Diego, California, Cleveland, Ohio, Minneapolis, Minnesota, and elsewhere.  Counsel for Utah Foam are located in Washington, D.C., San Francisco, California, Chicago, Illinois, St. Louis, Missouri, and New York City, New York.  Counsel for Emma Chemicals are located in New

---

[29] *See* https://www.tripadvisor.com/HotelsList-Detroit-Downtown-Hotels-zfp3104.html (last visited July 12, 2018).

[30] *See* Era Polymers Complaint at ¶ 19.

[31] *See* https://www.marketsandmarkets.com/ResearchInsight/mdi-tdi-polyurethane-market.asp (last visited July 19, 2018).

York City.  Counsel for Era Polymers are located in Washington, DC, Colorado, New York, Texas, Michigan, Philadelphia, and New Orleans.  Relevant nonparties, such as trade associations and their counsel are similarly scattered.[32]

Plaintiff Utah Foam argues that the Western District of Pennsylvania would be convenient because a few defendant entities are located on the East Coast.  Utah Foam Brief at 8-9.  For example, Utah Foam asserts that Wanhua America is located in Newtown Square, Pennsylvania.  Utah Foam Brief at 8.  Yet, Newtown Square is near Philadelphia (in the Eastern District of Pennsylvania), and is approximately 300 miles from Pittsburgh.  Likewise, Utah Foam's argument that the Western District of Pennsylvania is close to BASF in Florham Park, New Jersey is misleading.  Utah Foam Brief at 9.  Florham Park, New Jersey is approximately 350 miles from Pittsburgh.

The same logic applies to the Eastern District of Pennsylvania and the District of New Jersey.  While each forum might be convenient for a small few, neither one would be especially convenient for the majority of parties and counsel who would be coming from locations across the United States and internationally.  In sum, Detroit's central location, in the middle, would be the most accessible and efficient forum for all.

---

[32] *See* MDL MANUAL, § 6:5 ("The location of an important non-party may be important in a particular case.").  Nonparties such as trade associations, which Plaintiffs allege fostered the conspiracy in Diisocyanates, are headquartered in various locations.  For example, the American Chemistry Counsel is headquartered in Washington, D.C.  *See* https://www.americanchemistry.com/ContactUs (last visited July 12, 2018).  Notably, the members of those associations are located worldwide.  For example, the webpage for the International Isocyanate Institute (III) says the organization is based in Boonton, New Jersey, but specifies that member companies are "located in the Americas, Europe and the Asia Pacific region."  *See* http://www.diisocyanates.org/about-institute (last visited July 12, 2018).  In sum, nonparties are as dispersed as the parties and their counsel, and Detroit would provide a central location for them as well.

4.      **The docket conditions in the Eastern District of Michigan are favorable to accommodate the Actions**

Contrary to Plaintiff Utah Foam's assertions, there is no advantage to transferring the Actions to the Western District of Pennsylvania over the Eastern District of Michigan, where docket conditions are equally, if not more, favorable.  Utah Foam Brief at 11.

Among the four potential transferee districts, the Eastern District of Michigan is the most appealing in terms of judicial caseload.  The Eastern District of Michigan currently has three pending MDLs versus zero pending in the Western District of Pennsylvania, 14 pending in the District of New Jersey, and 13 pending in the Eastern District of Pennsylvania, putting the Eastern District of Michigan in the most balanced position to handle the Actions.[33]  In addition, the Eastern District of Michigan has 15 judgeships (with zero vacancies) versus 10 judgeships (with 6 vacancies) in the Western District of Pennsylvania, 17 judgeships in the in the District of New Jersey (with 4 vacancies), and 22 judgeships (with 4 vacancies) in the Eastern District of Pennsylvania.[34]  Further, as of December 31, 2017, the Western District of Pennsylvania had a much higher number of vacant judgeship months (49.2 months) than the Eastern District of Michigan (12 months).[35]  The Eastern District of Michigan (25.3 months) also fosters a faster disposition time from the date of filing to trial over the Western District of Pennsylvania (33.5

---

[33] *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-16-2018.pdf (last visited July 24, 2018).

[34] *See* http://www.uscourts.gov/default/files/fcms_na_distprofile1231.2017.pdf (last visited July 23, 2018); http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited July 24, 2018).

[35] *See* http://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2017.pdf (last visited July 23, 2018).  Compare also the Eastern District of Pennsylvania with 22 months, and the District of New Jersey with 31.0 months.  *Id.*

months) and the District of New Jersey (41.1 months)[36] and, based on all of these statistics, will be able to steer this MDL most expeditiously.

The docket in the District of New Jersey, another potential transferee forum, is particularly taxed.  Although the District of New Jersey, like every federal district, possesses many qualified and distinguished judges, currently, the District of New Jersey is overburdened and experiencing a severe shortage of judges.  In fact, in a recent interview, Judge Linares, the Chief Judge of the District of New Jersey, in response to a question posed to the Judge about earlier comments he made about there being a judicial crisis in the District of New Jersey stated:

> We have a judicial crisis in New Jersey.  I say that because our court is an extremely busy court.  We are a seventeen judge court, active judge court, the federal judiciary who tracks numbers and filings and so forth, has determined we really should be at a twenty judge court, and we're trying to get Congress to increase the number of judges in New Jersey to twenty.  But as of right now, we have, in essence, five vacancies out of seventeen, and we're gonna be up to six come next year, or at least potentially six if one of the judges that becomes Senior eligible next year, chooses to go Senior status.  So... How does that impact our lives in New Jersey?  It impacts... it impacts your lives a lot.  When you think about it, New Jersey... and just to put it in perspective, from 2016 to 2017, we had a 47% increase in case filers.  We're the first... we're top among the Third Circuit, second... we're top in the Third Circuit, fourth in the nation, in the number of filings.  Seventh in weighted cases, which means complex, complicated cases. And we handle a ton of pharmaceutical patent work and criminal cases.[37]

Further, the number of filings in the District of New Jersey is simply breathtaking.  As of March 31, 2018, the District of New Jersey had 20,827 total pending cases, more than all of the

---

[36] *See* http://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2017.pdf (last visited July 23, 2018).  The Eastern District of Pennsylvania time from filing through trial is 21.3 months.  *Id.*

[37] May 5, 2018 Interview between Judge Jose Linares and Steve Adubato available at https://steveadubato.org/shortage-of-nj-federal-judges-could-lead-to-judicial-crisis.html (last visited July 9, 2010).  *See also* https://www.nj.com/news/index.ssf/2018/02/fewer_judges_more_cases_a_growing_crisis_in_nj_fed_1.html (last visited July 9, 2018).

proposed forums combined.[38]  Based on these statistics, it is clear the Eastern District of Michigan would be the most favorable forum for the expeditious and efficient handling of the Actions.[39]  The Honorable Victoria Roberts in the Eastern District of Michigan is eminently qualified to handle the Actions.  Judge Roberts has presided over at least eight antitrust cases since 2004, making her an especially suitable candidate to handle the antitrust actions here.[40]

### 5.     The Eastern District of Michigan is especially well-equipped to preside over this MDL, having previously handled other large antitrust class actions

The Eastern District of Michigan is particularly well-suited to handle an MDL such as the one proposed here, given its expertise in handling one of the largest antitrust MDL cases in the country – *Auto Parts*.  Utah Foam mistakenly portrays *Auto Parts* as a liability when, in fact, it is a great asset.  Utah Foam Brief at 11.  Utah Foam incorrectly asserts that the docket in the Eastern District of Michigan is clogged by the *Auto Parts* actions.  Utah Foam Brief at 11.  This is incorrect, as most of the 41 *Auto Parts* actions are now resolved.

*Auto Parts* is perhaps the largest MDL in the country, involving over 41 separate antitrust cases coordinated before the Honorable Marianne O. Battani in the Eastern District of Michigan.  After years of coordinated discovery and efficient direction by the Court to conserve resources, avoid duplication, and minimize costs, nearly all cases are now resolved, resulting in one of the largest collective settlements in history to benefit consumers, and setting precedent for new ways

---

[38] *See* http://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2017.pdf (last visited July 9, 2018).  There are 6,370 cases filed in the Eastern District of Michigan, 2,795 in the Western District of Pennsylvania, and 7,747 in the Eastern District of Pennsylvania.  *Id.*

[39] *See* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2018.pdf (last visited July 12, 2018).

[40] *See* https://dockets.justia.com/search?judge=victoria+roberts&court=miedce&nos=410&cases=mostrecent (last visited July 24, 2018).

of coordinating discovery to best conserve costs in complex cases.  The Court's experience in

handling an MDL of this size and magnitude, and the lessons learned from it, are surely an asset

for any antitrust class action that may come to the district.[41]

In addition to *Auto Parts*, the Panel has ordered transfer to the Eastern District of

Michigan for centralization in similar litigations.

## IV.     STEPS TAKEN TO PURSUE ALTERNATIVES TO CENTRALIZATION

On July 11, 2018, in response to Utah Foam's motion for transfer, the Panel issued a

Notice of Filing and Publication of Briefing Schedule in MDL No. 2862, ECF No. 2 ("Notice").

The Notice instructed:

> In their briefs, the parties should address what steps they have
> taken to pursue alternatives to centralization (including, but not
> limited to, engaging in informal coordination of discovery and
> scheduling, and seeking Section 1404 transfer of one or more of
> the subject cases).

*See* Notice at 1.

Accordingly, on July 19, 2018, counsel for Plaintiff Isaac Industries reached out to

counsel in the other Actions to begin the discussion of potential alternatives to centralization and

informal coordination.  *See* July 18, 2018 email from Anthony Shapiro to Counsel, attached

hereto as Exhibit 1.

A call with counsel across all Actions occurred on July 30, 2018.  Counsel in the Actions

discussed the potential for transfer under § 1404, and the possibility of informal coordination of

discovery.  While the group made best efforts to consider the potential alternatives of Section

1404 transfer and/or the potential to informally coordinate discovery, no agreements could be

---

[41] *See also In re Refrigerant Compressors Antitrust Litig.*, 626 F. Supp. 2d 1320, 1321
(J.P.M.L. 2009) (centralizing antitrust class action in Eastern District of Michigan because it had
a "caseload that is relatively favorable to steer this litigation on a prudent course").

reached, and counsel seemed to support centralization of cases under Section 1407 as the best option.

### V.      CONCLUSION

Plaintiff Isaac Industries, Inc. respectfully requests that the Actions, and any later-filed similar actions (or tag-along actions) be transferred to the Eastern District of Michigan before the Honorable Victoria A. Roberts for coordinated or consolidated pretrial proceedings.

DATED:  August 1, 2018                          Respectfully Submitted,

By: /s/ Steve W. Berman
    Steve W. Berman
Anthony D. Shapiro
Ronnie Seidel Spiegel
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eight Avenue, Suite 3300
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
tony@hbsslaw.com
ronnie@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 N. Cityfront Plaza Drive, #2410
Chicago, IL 60611
Tel: (708) 628-4958
Fax: (708) 628-4950
jasonz@hbsslaw.com

Michael E. Criden
Kevin Bruce Love
**CRIDEN & LOVE, P.A.**
7301 SW 57th Court, Suite 515
South Miami, Florida  33143
Tel: 305-357-9010
Fax: 305-357-9050
klove@cridenlove.com

Simon B Paris
Patrick Howard
**SALTZ MONGELUZZI BARRETT &
BENDESKY PC**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Tel:  215-496-828
Fax: 215-496-0999
sparis@smbb.com
phoward@smbb.com

Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN  55402
Telephone: (612) 333-8844
Facsimile:  (612) 339-6622
dgustafson@gustafsongluek.com

Steven J. Greenfogel
**LITE DEPALMA GREENBERG LLC**
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Tel: 267-519-8306
Fax: 973-623-0858
sgreenfogel@litedepalma.com

E. Powell Miller
Sharon S. Almonrode
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: 248-841-2200
Fax: 248-652-2852
epm@millerlawpc.com
ssa@millerlawpc.com

*Attorneys for Plaintiff Isaac Industries, Inc.*