**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re Diisocyanates Antitrust Litigation | MDL No. 2862 |

**REPLY OF UTAH FOAM PRODUCTS, INC. IN SUPPORT OF TRANSFER OF
RELATED ACTIONS TO THE WESTERN DISTRICT OF PENNSYLVANIA AND TO
REQUESTS TO CENTRALIZE FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS IN THE EASTERN DISTRICT OF PENNSYLVANIA, THE
EASTERN DISTRICT OF MICHIGAN, THE DISTRICT OF NEW JERSEY, AND THE
SOUTHERN DISTRICT OF NEW YORK**

**I.      INTRODUCTION AND RECENT FACTUAL DEVELOPMENTS**

On July 10, 2018, the Judicial Panel on Multidistrict Litigation ("J.P.M.L." or "Panel")

created the present multidistrict litigation ("MDL") docket in response to Utah Foam Products,

Inc.'s ("Movant") request to transfer what were then three related putative antitrust class actions,

pursuant to 28 U.S.C. §1407, to the United States District Court for the Western District of

Pennsylvania for coordinated pretrial proceedings. Those actions are: *Utah Foam Prods., Inc. v,*

*Bayer A.G., et al*., No. 2:18-cv-00858-LPL (W.D. Pa.) ("*Utah Foam*"); *Isaac Indus. v. BASF*

*Corp., et al*., No. 2:18-cv-12089 (E.D. Mich.) ("*Isaac Industries*"); and *C.U.E., Inc. v. BASF AG*,

*et al.*, No. 2:18-cv-11439 (D.N.J.) ("*C.U.E.*"). Since this MDL docket was created, three more

related antitrust class actions have been filed: *Emma Chemicals Co., Inc. v. BASF SE, et al*., No.

2;18-cv-02958-GJP (E.D. Pa.) ("*Emma Chemicals*"); *Era Polymers Proprietary, Ltd. v. BASF SE,*

*et al*., No. 2:18-cv-LJM-APP (E.D. Mich.) ("*Era*"); and *Elliott Co. of Indianapolis v. Bayer A.G.,*

*et al*., No. 7:18-cv-06882 (S.D.N.Y.) ("*Elliott*"). All of the foregoing actions are referred to herein

as the "Related Actions".

Utah Foam hereby submits this reply brief that responds to: (1) the motion by the plaintiff in *C.U.E.* to transfer the Related Actions to the District of New Jersey (MDL No. 2862, ECF No. 387); (2) the motions by the plaintiffs in *Isaac Industries* (MDL No. 2862, ECF No. 39) and in *Era* (MDL No. 2862, ECF No. 46) to transfer the Related Actions to the Eastern District of Michigan; (3) the alternative motion by the plaintiff in *Era* to centralize the Related Actions in the District of Kansas; (4) the motion by the plaintiff in *Emma Chemicals* to transfer the Related Actions to the Eastern District of Pennsylvania (MDL No. 2862, ECF No. 7); (5) the motion by the plaintiff in *Elliott* to transfer the Related Actions to the Southern District of New York (MDL No. 2862, ECF No. 40); and (6) the Defendants' request to transfer these cases to the Eastern District of Pennsylvania or, alternatively, the Western District of Pennsylvania (MDL No. 2862, ECF No. 47). The Movant still favors centralization in the Western District of Pennsylvania. If for any reason the J.P.M.L. elects to send the cases elsewhere, the Movant alternatively favors centralization in the Southern District of New York, where the plaintiff in *Elliott* filed its case.

## II.   CENTRALIZATION IS PREFERABLE TO INFORMAL COORDINATION AMONG MULTIPLE COURTS OR TRANSFER UNDER 28 U.S.C. §1404.

For all of the reasons expressed in the Movant's motion, centralizing these actions will safeguard the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. 28 U.S.C. § 1407(a). MDL No. 2862, ECF No. 1 at 5-7. There are now six actions pending in five district courts.[1] The cases present a complex litigation, likely to involve substantial foreign discovery and coordination with ongoing criminal proceedings. These factors all favor centralization in one district under Section 1407. *In re Capacitors Antitrust Litig. (No. III)*, 285 F.Supp.2d 363, 365 (J.P.M.L. 2017). All parties now agree that centralization under Section 1407

---

[1] The plaintiff in *Isaac Industries* refers to five actions, but is apparently unaware of the filing of the complaint in *Elliott*. *See* MDL No. 2862, ECF No. 39 at 1 n.1.

is appropriate. *See* MDL No. 2862, ECF No. 7 at 2-5; MDL No. 2862, ECF No. 38 at 2-4; MDL No. 2862, ECF No. 39 at 4-8; MDL No. 2862, ECF No. 47 at 3-4; MDL No. 2862, ECF No. 50 at 2-5.

The Panel may be concerned that six cases are two few for centralization. However, the J.P.M.L. has centralized fewer or similar numbers of cases in the past. *E.g.*, *In re Natrol, Inc. Glucosamine Marketing & Sales Practices Litig.*, 26 F.Supp.3d 1392, 1393-94 (J.P.M.L. 2014) (centralizing four actions in three districts); *In re Michael's Stores, Inc. Wage & Hour Employment Practices Litig.*, 24 F.Supp.3d 1368, 1369 (J.P.M.L. 2014) (centralizing five actions in four districts); *In re Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F.Supp.3d 1351, 1351 (J.P.M.L. 2014) (centralizing seven cases in six districts); *In re Schnuck Markets, Inc. Customer Data Security Breach Litig.*, 978 F.Supp.2d 1379, 1381 (J.P.M.L. 2013) ("*Schnuck*") (centralizing four cases filed in four districts); *In re Epogen & Aranep Off-Label Marketing & Sales Practices Litig.*, 545 F.Supp.2d 1365, 1365 (J.P.M.L. 2008) (centralizing five actions in five districts). For additional examples, see MDL No. 2862, ECF No. 40 at 2, 4-5. Thus, centralization of even six cases would be appropriate here.

The Panel has asked that the parties consider informal coordination or transfer under 28 U.S.C. § 1404 in lieu of centralization under Section 1407. That option is not feasible here for several reasons.

*First,* in deciding whether Section 1404 transfer is preferable to centralization under Section 1407, the Panel has placed significant weight on whether the various complaining parties are represented by identical counsel, are otherwise amenable to transfer under Section 1404, and whether transfer motions under that provision have been filed. *See, e.g., In re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litig.*, 268 F.Supp.3d 1356, 1357 (J.P.M.L.

3

2017); *Schnuck*, 978 F.Supp.2d at 1381; *In Re Niaspan Antitrust Litig.*, 971 F.Supp.2d 1346, 1347 (J.P.M.L. 2013); *In re Dollar Tree Stores, Inc. Fair Labor Standards Act (FLSA) Wage & Hour Litig.*, 829 F.Supp.2d 1376, 1377 (J.P.M.L. 2011). These factors are not present here.

Here, no Section 1404 transfer motions have been filed by any party.

Nor has amenability to informal coordination been demonstrated. The separate counsel for the various plaintiffs (other than the plaintiff in *Elliott*, who had not then filed) had a telephonic conference on July 30, 2018 to discuss this option and it was unsuccessful. The counsel for the plaintiffs in *Isaac Industries*, *C.U.E.*, *Emma Chemicals* and *Era* each advocated for their respective districts and were unable to convince each other of the venue to which the cases should be sent. When co-counsel in *Utah Foam* asked about the possibility of reaching an agreement on that call, he was told by counsel for *Isaac Industries* that it was obvious that none would be reached.[2] *See* MDL No. 2862, ECF No. 38 at 4 n.2; MDL No. 2862, ECF No. 39 at 17. As noted above, counsel for plaintiffs in the various cases have expressed their preferences for the district in which each of those cases was filed.

*Second*, any agreement would have to involve the 18 defendants which have been named thus far, who are companies spread over the United States and three foreign countries. As early as July 27, 2018, the domestic defendants made it clear that they preferred centralization by the JPML in a stipulation that they entered into in the *Utah Foam* case staying all proceedings therein until 28 days after the Panel rules. As the stipulation states: "[i]ndeed, staying the proceedings will allow

---

[2] This is not to say that the plaintiff in *Utah Foam* has made no efforts at some degree of coordination. The parties in *Utah Foam* have stipulated to coordinating any discovery that might be allowed in any of the cases before the J.P.M.L. rules on centralization. The stipulation states: "[t]he Movants agree that, if discovery proceeds in another District, or if an answer is provided in another District, the stay in this matter should be lifted for the limited purpose of allowing the same action to occur in this District."  *Utah Foam* ECF No. 34 at 3.

the transferee court time, following the JPML's transfer of the related actions, to consider and then enter an appropriate schedule for all of the coordinated or consolidated proceedings, without needing to adjust potentially different schedules entered before transfer by different courts for individual actions." *Utah Foam* ECF No. 34 at 4.  The defendants have further expressed their support for centralization in their filings in this MDL docket. MDL No. 2862, ECF No. 47 at 3-4.

*Third,* in the period of about a month while this MDL docket has been pending, the number of cases on file has doubled. The Related Actions, all of which involve claims of a nationwide conspiracy, are now spread across five federal district courts: (1) the Western District of Pennsylvania, (2) the Eastern District of Pennsylvania, (3) the Eastern District of Michigan, (4) the District of New Jersey, and (5) the Southern District of New York. The Movant expects more cases to be filed before the Panel hears oral argument on this motion on September 27, 2018. The likely existence of such future filings will only make more difficult the alternative of informal coordination or Section 1404 transfers. As the Panel said in *Shnuck*, 11 F.Supp.3d at 1381-82 (footnote omitted):

> Our recent decisions denying centralization in favor of Section 1404 transfer are distinguishable from these current circumstances. For instance, *In re Gerber* [*Probiotic Marketing & Sales Practices Litig*., 899 F.Supp.2d 1378 (J.P.M.L. 2012)] involved more actions (ten) and districts (five) than this litigation, but the first-filed Central District of California action already had been transferred, *sua sponte*, via Section 1404 to the consolidated New Jersey proceedings, and another judge opined that the action "should not proceed independently from [the consolidated action in the District of New Jersey], as judicial economy counsels against unnecessary duplication." *In re Gerber*, 899 F.Supp.2d at 1379 n. 2. Other recent decisions in which we denied centralization in favor of Section 1404 motions have involved fewer districts than here and/or indications from counsel that they were amenable to Section 1404 transfer. With an estimated 2.4 million affected customers and stores in five states, additional tag-along actions also may be filed in this litigation. Considering all these factors, we conclude that centralization is most appropriate

5

> now. It expeditiously places all related actions before a single judge who can ensure that pretrial proceedings are conducted in a streamlined manner leading to the just and efficient resolution of all actions.

The same is true in this case.

Finally, while these cases all involve common allegations of a conspiracy to fix prices of methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI") (collectively "Diisocyanates") sold to entities in the United States, its territories and the District of Columbia (and their controlled subsidiaries, affiliates, agents and/or or joint ventures), the defendants named in the various complaints are not identical. The plaintiffs in *Isaac Industries* and *Era*, unlike the other plaintiffs, did not sue certain Mitsui-related entities. The plaintiff in *C.U.E.* did sue certain Lanxess entities not named by anyone else. The plaintiff in *C.U.E.* also sued Wanhua Chemical U.S. Holding, Inc., based in Houston, Texas, which was again not named by others. And the Plaintiff in *Emma Chemicals* sued Bayer MaterialScience, which was also not named by anyone else and no longer exists after the creation of Covestro LLC ("Covestro").

Similarly, the commencement of the Class Periods alleged in the various complaints do differ: (a) January 1, 2015 (*C.U.E.* and *Isaac Industries*); (b) January 1, 2016 (*Utah Foam*, *Emma Chemicals*, and *Elliott*); and (c) July 1, 2016 (*Era*).

All of this makes informal coordination or Section 1404 transfer unworkable. This is a case where common issues abound. But the way legal claims brought under the Sherman and Clayton Acts have been presented is not identical in all details. It does not have to be in order for centralization to be granted (MDL No. 2862, ECF No. 1 at 5 n.2), but such differences do militate in favor of having a single judge authorized to take pretrial control over the Diisocyanates antitrust litigation rather than relying on Section 1404 transfers or informal coordination.

III.   **THE RELATED ACTIONS SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF PENNSYLVANIA.**

As a result of the additional filed cases, the Western District of Pennsylvania has a concentration of parties; it is home to defendants Covestro, and Lanxess Corporation, as well as the plaintiff in *C.U.E.*.[3] The defendants concede this fact, and further admit that "the Western District of Pennsylvania…has more significant connections to this litigation than the other venues outside Pennsylvania, where the related cases have been filed, [and] would be a suitable destination." MDL No. 2862, ECF No. 47 at 1, 8.

The Movant has previously discussed comparative judicial caseload statistics and other factors for the Western District of Pennsylvania, the Eastern District of Michigan, and the District of New Jersey. MDL No. 2862, ECF No. 1 at 8-13.  With respect to the additional venues presented to the Panel since that filing, the Western District of Pennsylvania has fewer pending cases (2,795) than the Eastern District of Pennsylvania (7,396) and the Southern District of New York (17,579) and fewer weighted filings per judgeship (308) than either of those respective districts (314, 491).[4] As the Panel said in *In re Inter-Op Hip Prostheses Prods. Liability Litig.*, 147 F.Supp.2d 931, 933-34 (J.P.M.L. 2001):

> Given the range of locations of parties and witnesses in this docket, the geographic dispersal of current and anticipated constituent actions, and the wide array already of suggested transferee districts, it is clear that any one of a large number of districts would qualify as an appropriate transferee forum for this litigation nationwide in scope. In concluding that the Northern District of Ohio is the appropriate forum for this docket, we note

---

[3] The plaintiff in *C.U.E.* rightly notes that Bayer Corporation, which was based in Pittsburgh (http://www.post-gazette.com/business/businessnews/2013/08/11/Bayer-planning-to-maintain-its-presence-in-Pittsburgh-region/stories/201308110209; https://www.yellowpages.com/pittsburgh-pa/mip/bayer-materialscience-482880935), gradually relocated its operations in Whippany, New Jersey, after it made plans to spin its Diisocyanates business to Covestro.

[4] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2018.pdf.

> that the Ohio district is an accessible, geographically central
> metropolitan district that i) is not currently taxed with other
> multidistrict dockets, and ii) enjoys general caseload conditions
> permitting the Panel to effect the Section 1407 assignment to a
> court with the present resources to devote the substantial time to
> pretrial matters that this complex docket is likely to require.

The same thing could be said here of the Western District of Pennsylvania.

Several of the filers have noted that: (a) the *Utah Foam* case is before a magistrate judge (MDL No. 2862, ECF No. 38 at 11; MDL No. 2862, ECF No. 39 Exh. 1 at 2) and (b) the Western District of Pennsylvania has a shortage of full-time Article III judges. Neither argument is convincing (MDL No. 2862, ECF No. 38 at 8; MDL No. 2862, ECF No. 39 at 14).

The first point is moot. On July 31, 2018, the *Utah Foam* case was reassigned to the Honorable Arthur J. Schwab. Judge Schwab was appointed to the federal bench by President George W. Bush and took office in 2003. Judge Schwab is qualified to lead this litigation; he has an extensive background in business litigation. As his official biography states:

> He worked at Reed Smith LLP from 1973 to 1990 serving as the
> Deputy Head of the Litigation Group and the founding Chair of
> its TECHLEX (technology law) Group. He joined Buchanan
> Ingersoll Professional Corporation in the Fall of 1990 as Chair of
> Litigation (1990-1999) and then as Chief Counsel - Complex
> Litigation (2000 to 2002).
>
> During his thirty (30) years in private practice, he established a
> nation-wide litigation practice. He worked in the areas of trade
> secrets, confidential information, employment agreements
> (covenants-not-to-compete and confidentiality agreements),
> software copyright infringement, trademark, unfair competition
> and diversion of corporate opportunities.
>
> As part of his national litigation practice, Mr. Schwab was a
> frequent speaker at numerous seminars and conferences relating
> to trial strategies, damages, litigation ethics, evidence, transfer of
> technology, law and technology, trade secrets and employment
> agreements. He was quoted in numerous national and regional
> printed media and published several articles.
>
> He is past Chair of the Civil Litigation Section of the

Pennsylvania Bar Association; past President of the American Inns of Court Pittsburgh Chapter; past member of the Board of Governors of the Academy of Trial Lawyers of Allegheny County; and past Chair of the Council of the Civil Litigation Section of the Allegheny County Bar Association.

He is listed in the 2003-2004, 10th edition of The Best Lawyers in America for both business litigation and intellectual property law. He serves on the faculty of the National Trial Advocacy College of the University of Virginia School of Law and taught an Intellectual Property course at Grove City College from 2002-2014.

He co-authored Chapter 1, "Introduction to Federal Practice," Federal Civil Procedure Before Trial -- 3rd Circuit, American Inns of Court Series, Federal Practice Guide, Lawyers Cooperative Publishing Company (1996).

He is the Chair of the Joint Information Technology Committee, and past Chair of the Court's Case Management/Electronic Case Files Committee and the Alternative Dispute Resolution Committee. He also serves on the Security and Safety Committee, Court Reporters' Committee, and Patent Pilot Task Force.

Judge Schwab received the Conflict Resolution Day Award from the Mediation Council of Western Pennsylvania on October 18, 2012, due to his leadership and support of the Court's ADR Program. He also received an Honorary Membership from the Federal Bar Association, Western Pennsylvania Chapter, on November 6, 2013, in recognition of his judicial accomplishments.[5]

Judge Schwab has MDL experience, having presided for several years over *In re Community Bank of Northern Va. Mortgage Lending Practices Litig.*, MDL No. 1074 (W.D. Pa.), which he took over after the death of the original transferee judge, the Honorable Gary Lancaster. *See In re Community Bank of Northern Va. Mortgage Lending Practices Litig.*, MDL No. 1074, 2013 WL 3972458, at *2 (W.D. Pa. July 31, 2013). Judge Schwab has also presided over a number

---

[5] http://www.pawd.uscourts.gov/content/arthur-j-schwab-senior-district-judge.

of prior significant antitrust cases. *See, e.g., West Penn Allegheny Health Sys. v. UPMC*, No. 09-cv-0480 (W.D. Pa.); *Logue v. West Penn Multi-List, Inc.*, No. 10-cv-0451 (W.D. Pa.).

A proposed stipulation to stay all proceedings in *Utah Foam* until after the Panel decides transfer was granted by Judge Schwab (*Utah Foam*, ECF No. 44), and, as a result, the case has been administratively closed during the pendency of the Panel's decision (*Utah Foam*, ECF No. 44), so that it is not counted by the Federal Judicial Center for statistical purposes. This was the same procedure used in the railway industry "no poach" antitrust cases (*see, e.g.*, ECF No. 15 in *Carruth v. Knorr-Bremse AG, et al.*, No. 2:18-cv-00469-CB-CRE (W.D. Pa.)). If the Related Cases here are transferred to the Western District of Pennsylvania, the case is re-opened. This has happened after the Panel's transfer order in *In re: Railway Industry Employee No-Poach Antitrust Litig.*, MDL No. 2850, ECF No. 25 in MD/1:18-cv-01191 (J.P.M.L. Aug. 2, 2018) ("*Railway Industry*")

With respect to the second argument, it is true, as counsel for defendants and for the plaintiff in *C.U.E.* notes (MDL No. 2862, ECF No. 47 at 8; MDL No. 2862, ECF No. 38 at 8; ) that the present administration has not filled all of the vacant seats for Article III judges in the Western District of Pennsylvania, but that is a common issue across the nation.[6] A similar argument was recently made as to why a group of antitrust cases should not be centralized in the Northern District of Illinois, saying the federal judiciary in that district was "under siege" because district court judgeships had not been filled[7]; the Panel nevertheless transferred a group of cases

---

[6] https://www.nj.com/news/index.ssf/2018/02/fewer_judges_more_cases_a_growing_crisis_in_nj_fed_1.html. Indeed, counsel for *Isaac Industries* makes the same argument against the District of New Jersey, which counsel for *C.U.E.* favors. MDL No. 2862, ECF No. 39 at 15.

[7] https://www.law360.com/articles/1038774/chicago-judges-under-siege-amid-wave-of-vacancies.

then pending in the Southern District of New York to the Illinois federal court. *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litig*., MDL No. 2842, 2018 WL 3014965, at *2 (J.P.M.L. 2018). Similarly, the Panel very recently sent the "no poach" cases in Railway Industry to the Western District of Pennsylvania. That district, by defendants' own admission, has the most nexus to this litigation and has enough resources to manage this case effectively.

The defendants further observe that access to and from Pittsburgh is less convenient than access to and from Philadelphia. MDL No. 2862, ECF No. 47 at 8. It is undisputed that Philadelphia has the largest airport in the State of Pennsylvania, but Pittsburgh has the second largest (Pittsburgh International Airport ("PIT")) and PIT is among the top 50 airports in the United States, servicing 8.9 million passengers in 2017.[8] As stated on PIT's website:

> *Air Transport World* magazine on Tuesday announced Pittsburgh International Airport as its 2017 Airport of the Year, joining an impressive list of past winners around the world as the first U.S. airport                     to                     win.
>
> Pittsburgh joins the ranks of Hong Kong International, London Heathrow and Singapore Changi, respectively, since the airport category was added four years ago. ATW, part of the Aviation Week Network, has awarded the aviation industry's best-in-class for 43 years and is recognized in the industry as a key source industry professionals rely on for analysis, marketing and intelligence.
>
> "In the past two years, Pittsburgh International Airport has nearly doubled the number of nonstop destinations available to travelers. Just like our region, the airport service continues to grow, serving business and leisure travelers alike," Allegheny County Executive Rich Fitzgerald said.[9]

---

[8] https://en.wikipedia.org/wiki/Pittsburgh_International_Airport.

[9] http://www.flypittsburgh.com/newsroom/news-releases/pit-named-airport-of-the-year-by-air-transport-wor.

In addition to flights to cities across the United States, PIT provides non-stop flights to Germany, where several defendants are located.[10]

Counsel in *Isaac Industries* argues that Dow Chemical ("Dow") is based in Midland, Michigan and in *In re Urethans Antitrust Litigation*, MDL No. 1616, was a hold out defendant and went to trial. MDL No. 2862, ECF No. 39 at 9-10. It therefore believes that the Related Actions ought to be centralized there. There is no Panel precedent, however, for centralizing a case where the most intransigent defendant might be located. Indeed, the Movant expects all defendants named here to vigorously contest liability. The Movant also expects Dow to raise defenses based on what happened in MDL No. 1616.

Counsel in *Isaac Industries* and *Era* also contends that Detroit is centrally located with respect to the headquarters of the various domestic defendants and that this fact justifies centralization there. MDL No. 2862, ECF No. 39 at 11; MDL No. 2862, ECF No. 46 at 3.[11] The Movant agrees that centrality of location is a factor in favor of centralization in a particular district and so argued in its initial motion. MDL No. 2862, ECF No. 1 at 12-13. Indeed, the J.P.M.L. centralized MDL No. 1616 in the District of Kansas because of its central location. *In re Urethanes*

---

[10] http://www.flypittsburgh.com/search?searchmode=anyword&searchtext=germany.

[11] The plaintiff in *Era* goes so far as to suggest that the Eastern District of Michigan is "conveniently located in the center of the country." MDL No. 2862, ECF No. 44 at 3. A geography primer would be helpful here. According to the United States Geographical Survey, the center of the conterminous United States is Lebanon Kansas; the center of the Continental United States is Castle Rock, South Dakota; the center of all 50 United States is also Castle Rock, South Dakota; and the center of the North American continent is Balta, North Dakota. https://pubs.usgs.gov/unnumbered/70039437/report.pdf. Detroit is 825 miles from Lebanon, 1,032 miles from Castle Rock, and 916 miles from Balta. https://distancecalculator.globefeed.com/US_Distance_Calculator.asp

*Antitrust Litig.*, 333 F.Supp.2d 1379, 1379 (J.P.M.K. 2004).[12] But this factor favors Pittsburgh, not

Detroit. As set forth in the chart below, the straight line distances from Pittsburgh to the

headquarters of various domestic defendants located outside of Pittsburgh is, in most instances,

shorter than, or roughly equal to, the distance from Detroit to such locations. Indeed, Detroit is

even 108 miles from Midland, Michigan, where Dow is located.[13]

**Straight Line Distance in Miles From Pittsburgh or Detroit to Various Defendant Venues**

| No. | Location | Distance in Miles From Pittsburgh, PA | Distance in Miles From Detroit, MI |
|---|---|---|---|
| 1. | Pittsburgh, PA | ----- | 205 |
| 2. | Rye Brook, NY | 333 | 491 |
| 3. | Florham Park, NJ | 295 | 460 |
| 4. | Whippany, NJ | 294 | 458 |
| 5. | Philadelphia, PA | 257 | 442 |
| 6. | The Woodlands, TX | 1121 | 1086 |
| 7. | Salt Lake City, UT | 1664 | 1488 |
| 8. | Covington, GA | 519 | 605 |
| 9. | Midland, MI | 309 | 108 |
| 10. | Houston, TX | 1137 | 1106 |

Therefore, the factor of centrality of location favors centralization in the Western District

of Pennsylvania, *not* the Eastern District of Michigan.

## IV. ALTERNATIVELY, THE RELATED ACTIONS SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK.

In the alternative, should the Panel decide not to transfer the Related Cases to the Western

District of Pennsylvania, the Movant urges that they be transferred to the Southern District of New

---

[12] In MDL No. 1616, there was a defendant located in California, which is not the case here.

[13] Straight line distances were calculated using the following website: https://distancecalculator.globefeed.com/US_Distance_Calculator.asp.

York, where the plaintiff in *Elliott* filed and where defendant Mitsui America is located.  MDL No. 2862, ECF No. 50 at 5.[14]

V.     **CONCLUSION**

For the reasons set forth above, the Movant respectfully requests that the J.P.M.L. transfer and coordinate or consolidate the related actions in the Western District of Pennsylvania. The Actions arise from virtually identical allegations, all describing a cartel of manufacturers and their actions to raise, fix and maintain the price of Diisocyanates.  Pretrial centralization of these Actions will be convenient for the parties and witnesses, will promote the just and efficient conduct of such actions, and will prevent inconsistent determinations regarding class related issues and management orders. In the event that the J.P.M.L. declines to centralize the Related Actions in the Western District of Pennsylvania, the Movant alternatively seeks centralization in the Southern District of New York.

Dated:  August 8, 2018                                      Respectfully submitted,

                                                                    /s/ Megan Jones
                                                                    Megan E. Jones (State Bar No. 296274)
                                                                    **HAUSFELD LLP**
                                                                    600 Montgomery Street
                                                                    Suite 3200
                                                                    San Francisco, CA 94111
                                                                    Tel: (415) 633-1908
                                                                    mjones@hausfeld.com

---

[14] The plaintiff in *Era* recommends as an alternative that this case be sent to Judge John Lungstrumm in the District of Kansas. MDL No. 2862, ECF No. 46 at 6. The experience of Judge Lungstrumm is undisputed; he presided over MDL No. 1616 for a decade. He is now 72 years old and on Senior Judge status, so it is not clear to the Movant whether he would want to take this case. If he does, he would be an excellent choice as well.

David B. Spear
**MINTO LAW GROUP, LLC**
Two Gateway Center
603 Stanwix Street, Suite 2025
Pittsburgh, PA 15222
Tel: (412) 201-5525
Fax: (412) 201-5526
dspear@mintolaw.com

Michael D. Hausfeld
Melinda R. Coolidge
**HAUSFELD LLP**
1700 K Street, NW
Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeld.com
mcoolidge@hausfeld.com

Brent Landau
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-3271
blandau@hausfeld.com

Arthur N. Bailey
Marco Cercone
**RUPP BAASE PFALZGRAF CUNNINGHAM, LLC**
1600 Liberty Building
424 Main Street
Buffalo, New York 14202
Tel: (716) 664-2967
bailey@ruppbaase.com
Cercone@ruppbaase.com

Robert N. Kaplan
Jeffrey P. Campisi
Elana Katcher
Matt McCahill
**KAPLAN FOX & KILSHEIMER, LLP**
850 Third Avenue, 14th Floor
New York, New York 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
Email: rkaplan@kaplanfox.com
Email: jcampisi@kaplanfox.com
Email: ekatcher@kaplanfox.com
Email: mmccahill@kaplanfox.com

George A. Zelcs
**KOREIN TILLERY, LLC**
205 N. Michigan Ave., Suite 1950
Chicago, IL 60601
gzelcs@koreintillery.com
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery
Carol O'Keefe
Michael Klenov
**KOREIN TILLERY, LLC**
One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
stillery@koreintillery.com
cokeefe@koreintillery.com
mklenov@koreintillery.com
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Counsel for Plaintiff Utah Foam Products, Inc.
and the Class*